IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

**MICHAEL JOSEPH PIZIAK,**

    **Plaintiff,**

**vs.**                                                     **CIVIL ACTION NO. 5:23-CV-00421**

**THE STATE OF WEST VIRGINIA,**
***ET AL.*,**

    **Defendants.**

**PROPOSED FINDINGS AND RECOMMENDATION**

Pending before the Court is Plaintiff's Application to Proceed Without Prepayment of Fees and Costs (ECF No. 1). By Standing Order, this matter was referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and a recommendation for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) (ECF No. 3). Having examined the amended "Complaint for Temporary Restraining Order and Relief and Preliminary and Permanent Injunctions"[1] (ECF No. 5), the undersigned concludes that this case must be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) which provides that the Court shall dismiss the case of a person proceeding *in forma pauperis* at any time if the Court determines that the action fails to state a claim for which relief can be granted.[2]

---

[1] On June 5, 2023, Plaintiff filed a "Complaint for Temporary Restraining Order and Relief and Preliminary and Permanent Injunctions" (ECF No. 2), however, after review of same, on June 5, 2023, the undersigned issued an order directing Plaintiff to amend his complaint no later than June 30, 2023, because he failed to state sufficient facts supporting a claim for relief. (ECF No. 4)

[2] Because Plaintiff is proceeding *pro se*, the documents he filed in this case are held to a less stringent standard than had they been prepared by a lawyer, therefore, they are construed liberally. See Haines v. Kerner, 404 U.S. 519, 520-521 (1972).

**Plaintiff's Allegations**

In his amended Complaint, Plaintiff has styled the case that includes several named Defendants, to-wit: the State of West Virginia; Little General Stores in Raleigh County; and Owner & Chief Coal River Fire Department. Plaintiff also names numerous additional Defendants in his Complaint: Raleigh County Sheriff Department of Beckley; West Virginia State Troopers of West Virginia; Raleigh County Prosecutor's Office; Southern Regional Jail; Magistrate of Raleigh County; West Virginia Motor Vehicles Agency of the State; Beckley City Police "merely because they act as a Metro and State Agency with the other police located in Beckley and Raleigh County, WV; and the State of West Virginia "overseeing all those Departments and Agencies." Ostensibly with respect to how this Court could exercise jurisdiction over his claims, Plaintiff asserts he "believes this belongs in this Court because it involves Constitution issues of the United States of America's Constitution." Plaintiff then alleges the following:

> Starting as early as 2023 and some early dates which are too long to list, the Plaintiff has been harassed, detained illegally, arrested illegally, experienced pain and suffering that is contradictory to State and Federal laws, experienced pain and suffering due to this, threatened, been denied use of property he has permission to be on, been told by police that the private store previously listed had banned him from the store and said he was trespassing when it is a public place & the defendant buys much products there, was never old he was banned or considered a trespasser, the police and dispatcher coordinated an effort to remove Plaintiff's constitutional freedom of liberty and just and law, the list goes on and on and on and too much to list but I'm prepared to verbally argue in court that my freedom and liberty has been compromised or cast to the side, and that I am not being treated under the Constitution of the U.S. as a citizen that has Constitutional rights, and I wish to be compensated for my pain and suffering, and I want the charges dismissed or ordered to go to trial by a jury of my peers who have not likely not experienced the same loss of freedom(s) and libert(y/ies).

(ECF No. 5 at 2) Plaintiff indicates that he was arrested on June 3, 2023, ostensibly for being banned from the Little General store on Harper Road in Beckley, West Virginia and in Glen Daniel – Plaintiff claims that this is another incident of him being "harassed" by both the Raleigh Sheriff's

Department and the manager of the store. Plaintiff states that the manager of the Little General considered the Plaintiff was trespassing and that he "had to push my motorcycle off the property because I got a DUI and revoked license[.]" (Id.) Plaintiff alleges that "the manager invoked his right to say I'm trespassing", but Plaintiff disputes this, and asks this Court "for relief/injunctions/whatever against Little General" because he was not trespassing. (Id. at 7) Plaintiff wants compensation for "having to buy another Yamaha wire for my spark plug" and for having to push his bike home; he claims to be disabled and only receives Social Security. (Id. at 7-8)

Plaintiff also alleges that the Chief and Owner of the Coal River Fire Department has also called the police on Plaintiff twice for trespassing through a flood plain behind the Fire Department. (Id. at 3) On June 5, 2023, the Chief called on Plaintiff again "when I was in the water, and I had to flee before police arrived. I was chased by Raleigh County police and that police came to my home with the State Police telling my mother that I was going to be arrested via them obtaining a warrant for my arrest." (Id.) Plaintiff hopes to "get relief before I'm jailed again." (Id.) Plaintiff further alleges that the Chief "or Owner" is blocking a stream to which Plaintiff insists he has access as is his right as a U.S. citizen. (Id. at 7)

Plaintiff admits "I do run from the cops a lot on my cycle" but they are unable to catch him "because I'm highly skilled" because he has been riding motorcycles since he was five years old. (Id.)

Plaintiff further alleges that when he filed his original complaint, he was arrested "seconds" later by the Raleigh County Sheriff's Department, which demonstrates "harassment." (Id. at 4) Plaintiff asserts that a Raleigh County Sheriff's Deputy advised him that his bond will be revoked, which is a reason for seeking injunctive relief. (Id.) Plaintiff alleges that he was arrested again by

3

the Raleigh County Sheriff, and released from jail on June 22, 2023. (Id.) Plaintiff alleges that he was arraigned twice by the Raleigh County Magistrate, which he compares to being tried twice "(double jeopardy)", as he was initially arraigned on felonies, but subsequently arraigned on the same charges, only they were misdemeanors. (Id.) Plaintiff states that after his release from jail, he was arrested again by the State Police for the very same charges the Raleigh County Sheriff's Department charged him with. (Id.) Plaintiff claims a helicopter followed him in Eccles, West Virginia on "my street and trail bike"; he states that "[i]t's hard not to break laws when your every move is being tracked and you are being doubly charged, warranted, arraigned, and even arrested" – "[s]urely there are more serious crimes out there than me riding around on a 250cc motorcycle[.]" (Id.)

Plaintiff asks this Court to order the Raleigh County Sheriff's Department and West Virginia State Police to stop coming to his house and asking if he is the one who fled on the motorcycle. (Id. at 5) His elderly parents, with whom Plaintiff resides, "get upset with me every time the police come to the door[.]" (Id.) He also asks this Court "to furthermore order the Raleigh County magistrates and Raleigh County prosecutors office to stop issuing warrants for my arrest when it clearly wasn't me[.]" (Id.) Plaintiff states that unless these authorities have "absolute evidence it was me, then I want the visits and warrants and jail time stopped immediately[.]" (Id.)

Plaintiff further alleges that he is suing the Southern Regional Jail due to poor conditions: he was given only one shoe for two weeks of being held in solitary confinement; no recreational time; placed "in 'the chair' for 3 hours on one occasion and 4.5 hours on another, when inmates are only to be placed in a confined chair for 2 hours according to W.V. State statute[.]" (Id. at 5-6)

## The Standard of Review

Because Plaintiff has applied to proceed without prepayment of the Court's filing fees and costs, his complaint is subject to pre-service screening pursuant to 28 U.S.C. § 1915. See Randolph v. Baltimore City States Atty., 2014 WL 5293708, at *2 (D. Md. Oct. 14, 2014), *aff'd*, Randolph v. New Technology, 588 Fed.Appx. 219 (4th Cir. 2014). On screening, the Court must recommend dismissal of the case if the complaint is frivolous, malicious or fails to state a claim upon which relief can be granted. A "frivolous" complaint is one which is based upon an indisputably meritless legal theory. Denton v. Hernandez, 504 U.S. 25 (1992). A "frivolous" claim lacks "an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." Id. at 327. A claim lacks an arguable basis in fact when it describes "fantastic or delusional scenarios." Id. at 327-328. A complaint, therefore, fails to state a claim upon which relief can be granted factually when it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Deference is given to *pro se* Complaints. See Gordon v. Leeke, 574 F.2d 1147, 1153 (4th Cir. 1978) (A District Court should allow *pro se* plaintiffs reasonable opportunity to develop pleadings.); Coleman v. Peyton, 370 F.2d 603, 604 (4th Cir. 1965) (*Pro se* plaintiff should be given an opportunity to particularize potentially viable claims.). A *pro se* Complaint may therefore be dismissed for failure to state a claim only if it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Haines v. Kerner, 404 U.S. 519, 521 (1972), *quoting* Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Where a *pro se* Complaint can be remedied by an amendment, however, the District Court may not dismiss the Complaint, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34 (1992).

**Discussion**

As noted *supra*, in keeping with the practice to offer a *pro se* plaintiff an opportunity to file an amended complaint when an initial complaint fails to state any cognizable claim for relief, the undersigned directed Plaintiff to file an amended complaint. Although Plaintiff filed an amended complaint, he nevertheless still failed to supply any facts supporting any cognizable claim for relief. Plaintiff also failed to comply with the general rules of pleading as set forth in Rule 8(a) of the Federal Rules of Civil Procedure. That Rule provides as follows:

> (a) Claim for Relief. A pleading that states a claim for relief must contain:
>
> > (1) a short and plain statement of the grounds for the Court's jurisdiction, unless the court already has jurisdiction and the claim needs no jurisdictional support;
> > (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and
> > (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Plaintiff's Complaint(s) is not in compliance with Rule 8(a) for failing to allege sufficient facts and circumstances showing that he is entitled to relief. Liberally construing Plaintiff's allegations indicates that he is aggrieved by many things, but as a result of his own misconduct or outright illegal activities that appear to be the crux of his grievances. In other words, Plaintiff does not come to this Court with clean hands. Worse, Plaintiff improperly asks for injunctive relief for what appear to be clearly ongoing, if not repeated, State criminal proceedings against him.

It appears that Plaintiff's Complaint is a species of a Section 1983 and other unspecified statutory claims, which amounts to nothing more than collateral attacks to the ostensibly current and ongoing charges that had been filed against him in State criminal proceedings in Raleigh County, West Virginia. It is noted that 42 U.S.C. § 1983 provides a remedy for violations of all "rights, privileges, or immunities secured by the Constitution and laws [of the United States]." Thus, Section 1983 provides a "broad remedy for violations of federally protected civil rights."

Monell v. Dep't of Social Services, 436 U.S. 658, 685, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Generally, to state and prevail upon a claim under 42 U.S.C. § 1983, a plaintiff must prove that (1) a person acting under color of State law (2) committed an act which deprived him of an alleged right, privilege or immunity protected by the Constitution or laws of the United States.

As an initial matter, Plaintiff provides no factual support or even alleges any wrongdoing or misconduct by the "West Virginia Motor Vehicles Agency of the State and located in Beckley"[3], the "Beckley City Police", or the "State of West Virginia" which warrants dismissal of these Defendants outright. Indeed, Plaintiff admits that the Beckley City Police is included in this lawsuit "merely because they act as a Metro and State Agency with the other police"; Plaintiff also appears to include the State of West Virginia in this lawsuit as it "oversee[s] all those Departments and Agencies." Plaintiff also provides no names of any official from these agencies that could even remotely secure this Court's jurisdiction under Section 1983, let alone enjoin them.

Little General Store is an Improper Party:

Regarding Plaintiff's claims against the Little General store(s), they fail as a matter of law, as this is a private entity, not a state actor, and Plaintiff does not allege this Defendant, nor its manager, were acting under color of law. Indeed, Plaintiff admits the manager "invoked his right" to accuse Plaintiff of trespassing, which Plaintiff disputes (See ECF No. 5 at 7) – this is akin to a victim of a crime (of trespass) at worst, or at best, a civil dispute concerning Plaintiff's license to be on store premises. At bottom, there is no federal question presented by these allegations, let alone constitutional violations, that trigger this Court's jurisdiction.

Southern Regional Jail is an Improper Party:

---

[3] The undersigned construes the Plaintiff's naming of this Defendant as the Department of Motor Vehicles – in any event there is no allegation against this entity that justifies its inclusion in this lawsuit.

To the extent Plaintiff's complaint can be construed as a Section 1983 claim against the Southern Regional Jail, this claim also fails as a matter of law, because the jail is not a "person", and such a claim violates the Eleventh Amendment of the U.S. Constitution. See, Preval v. Reno, 203 F.3d 821 (4th Cir. 2000)(unpublished)(finding that the Piedmont Regional Jail is not a "person" under Section 1983); Roach v. Burch, 825 F.Supp. 116, 117 (N.D.W. Va. 1993)(stating that the West Virginia Regional Jail Authority is not a "person" under Section 1983); Webb v. Parsons, 2011 WL 2076419 (S.D.W. Va. May 6, 2011)(finding that the West Virginia Regional Jail Authority, an agency of the State of West Virginia, is immune from suit under the Eleventh Amendment). Plaintiff further fails to allege that any exception to the Southern Regional Jail's Eleventh Amendment immunity applies herein: (1) Congress has not specifically abrogated Eleventh Amendment immunity for state prison facilities; (2) West Virginia has not waived its sovereign immunity and consented to Plaintiff's suit; and (3) Plaintiff does not name a single Southern Regional Jail employee or official in his Complaint(s). See, e.g., Canterbury v. W. Reg'l Jail Auth., No. 3:18-cv-1440, 2019 WL 6545328, at *6 (S.D.W. Va. Nov. 7, 2019), *report and recommendation adopted by*, 2019 WL 6598349 (S.D.W. Va. Dec. 4, 2019) (citing Frew ex rel. Frew v. Hawkins, 540 U.S. 431, 437 (2004); Ex Parte Young, 209 U.S. 123 (1908)); see also Freeland v. Ballard, 6 F. Supp. 3d 683, 694 (S.D.W. Va. 2014)("Pursuant to the Eleventh Amendment, a federal Court may enjoin state officials to conform their future conduct to federal law, which is distinguishable from a retroactive monetary award paid from State funds.").

As Plaintiff is not currently subject to any action by the Southern Regional Jail, or threatened for purposes of Eleventh Amendment jurisprudence[4], any amendment to add a jail official would be meritless, therefore, it follows that the Southern Regional Jail is equivocally

---

[4] See McBurney v. Cuccinelli, 616 F.3d 393, 399 (4th Cir. 2010); Waste Mgmt. Holdings, Inc. v. Gilmore, 252 F.3d 316, 330 (4th Cir. 2001).

immune from Plaintiff's suit under the Eleventh Amendment. White v. W. Virginia Dep't of Transportation, No. 1:17-cv-4617, 2018 WL 3732719, at *2 (S.D.W. Va. Aug. 6, 2018).

To the extent Plaintiff is alleging a condition of confinement claim, in order to establish a violation of the Eighth Amendment[5] in the context of a challenge to conditions of confinement, an inmate must allege (1) a "sufficiently serious" deprivation under an objective standard and (2) that prison officials acted with "deliberate indifference" to the inmate's health and safety under a subjective standard. Wilson v. Seiter, 501 U.S. 294, 297-299, 111 S.Ct. 2321, 2323 - 2325, 115 L.Ed.2d 271 (1991); also see King v. Rubenstein, 825 F.3d 206, 218 (4th Cir. 2016)(quoting Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993))("[T]o make out a *prima facie* case that prison conditions violate the Eighth Amendment, a plaintiff must show both '(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials.' "); Iko v. Shreve, 535 F.3d 225, 239 (4th Cir. 2008)(explaining that the above requirements "spring from the text of the amendment itself; absent intentionality, a condition imposed upon an inmate cannot properly be called 'punishment,' and absent severity, a punishment cannot be called 'cruel and unusual.' ") To satisfy the objective component, Plaintiff must show that the challenged condition caused or constituted an extreme deprivation. De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003). To demonstrate an "extreme deprivation," a plaintiff "must allege a serious or significant physical or emotional injury resulting from the challenged conditions or demonstrate a substantial risk of such serious harm resulting from [his] exposure to the challenged conditions." Odom v. South Carolina Dept. of Corrections, 349 F.3d 765, 770 (4th Cir.

---

[5] To the extent Plaintiff is alleging deliberate indifference to his medical needs given his alleged status as a disabled individual, it is noted that such claims fall under the Fourteenth Amendment rather than the Eighth Amendment. See Stevens v. Holler, 68 F.4th 921, 931 (4th Cir. 2023) (citing Mays v. Sprinkle, 992 F.3d 295, 300 (4th Cir. 2021)). However, for purposes herein, the analysis does not change substantively or significantly as Plaintiff has not alleged any injury whatsoever during his confinement.

2003); also see Wilson v. Seiter, 501 U.S. at 298, 111 S.Ct. at 2321(A sufficiently serious deprivation occurs when "a prison official's act or omission . . . result[s] in the denial of the minimal civilized measure of life's necessities."); White v. Gregory, 1 F.3d 267, 269 (4th Cir. 1991)("In Strickler, we held that a prisoner must suffer 'serious or significant physical or mental injury' in order to be 'subjected to cruel and unusual punishment within the meaning of the' Eighth Amendment.") To satisfy the subjective component, Plaintiff must demonstrate a "deliberate indifference" to his health and safety by the Southern Regional Jail. In particular, Plaintiff must establish that the Jail "knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970, 1979, 128 L.Ed.2d 811 (1994). Plaintiff in this case must therefore allege and establish that the Southern Regional Jail was aware of the excessive risk to Plaintiff's health or safety and disregarded that risk.

Plaintiff only briefly mentions the conditions of his confinement while presumably a pretrial detainee at the Southern Regional Jail based on the following: given only one shoe when held for two weeks in solitary confinement; given no "Rec time"; and being placed in "the chair" for longer than allowed under State law.  (ECF No. 5 at 6) Prisoners are entitled to "adequate food, clothing, shelter, sanitation, medical care and personal safety." Wolfish v. Levi, 573 F.2d 118, 125 (2d Cir. 1978), *rev'd on other grounds*, Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). In Wilson v. Seiter, 501 U.S. 294, 111 S.Ct. 2321, 2327, 115 L.Ed.2d 271 (1991), the Supreme Court held that "some conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food,

warmth, or exercise-for example, a low cell temperature at night combined with a failure to issue blankets."

Liberally construing Plaintiff's Complaint and assuming all facts as true, Plaintiff's allegations do not establish an Eighth Amendment violation. For starters, there is no allegation that Plaintiff suffered any specific injury nor was Plaintiff deprived of an identifiable human need. See, e.g., Strickler v. Waters, 989 F.2d 1375, 1379-81 (4th Cir. 1993)(complaint of overcrowding and poor ventilation did not constitute a constitutional violation because inmate did not allege any specific injury as a result of the purported conditions); Hunnewell v. Warden, 19 F.3d 7 (1st Cir. 1994)(unpublished decision)(holding that inmate's claim that "cell lights are on during the night making it difficult to sleep" and "the ventilation system blows dust and fibers into his cell causing him to have headaches and bloody noses" was insufficient to state a claim under the Eighth Amendment); see also Beverati v. Smith, 120 F.3d 500, 504-505, n. 5 (4th Cir. 1997)(finding a six-month deprivation of clean clothing, linen, or bedding did not violate the Eighth Amendment); Johnson v. Fields, 2017 WL 5505991, at *10 (W.D.N.C. Nov. 16, 2017)("Plaintiff's claim that he was denied a shower and clean clothes for twelve days is insufficient as a matter of law to maintain an Eighth Amendment claim."); DeLoach v. South Carolina Dept. of Corr., 2009 WL 1651452, at * 3-4 (D.S.C. June 11, 2009), *aff'd.*, 355 Fed.Appx. 681 (4th Cir. 2009)(denial of a clean jumpsuit and hygiene packet for a thirty-day period did not constitute a denial of a 'basic need'); Walker v. Dart, 2010 WL 669448, at * 4 (N.D.Ill. Feb. 19, 2010)("Being denied clean clothes for two weeks, though unpleasant, is not a deprivation serious enough to support an Eighth Amendment claim)(collecting cases).

Indeed, Plaintiff's inability to engage in recreation also does not rise to an Eighth Amendment violation. See Williams v. Anderson, 2006 WL 709209, at *13 (S.D.W. Va. March

16, 2006)(finding segregated inmate's inability to "exercise, keep personal hygiene items, change clothes or shower, take part in academic and religious programs or telephone family members" did not violate the Eighth Amendment). The combined conditions of confinement complained of by Plaintiff amounts to nothing more than a "routine discomfort [that] is part of the penalty that criminal offenders pay for their offenses against society." Strickler, 989 F.2d at 1380. The Eighth Amendment "does not mandate comfortable prisons." Rhodes v. Chapman, 452 U.S. at 349, 101 S.Ct. at 2400. "To the extent . . . conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." Id. at 347, 101 S.Ct. 2392; Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995)(citing Hudson v. McMillian, 503 U.S. 1, 9, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992)); Lopez v. Robinson, 914 F.2d 486, 490 (4th Cir. 1990); see also Alberti v. Klevenhagen, 790 F.2d 1220, 1228 (5th Cir. 1986)(the Eighth Amendment does not require "the provision of every amenity needed to avoid mental, physical, and emotional deterioration").

<u>The Raleigh County Prosecutor and Raleigh County Magistrate Are Immune From Suit:</u>

It is clear from Plaintiff's Complaint that these Defendants were and currently involved in Plaintiff's ongoing criminal proceedings in State court therefore entitled to absolute immunity. See Imbler v. Pachtman, 424 U.S. 409, 430-431, 96 S.Ct. 984, 995, 47 L.Ed.2d 128) (1976)("We hold only that in initiating and in presenting the State's case, the prosecutor is immune from a civil suit for damages under § 1983."). A prosecutor is entitled to absolute immunity even if he or she "acted with an improper state of mind or improper motive." Shmueli v. City of New York, 424 F.3d 231, 237 (2nd Cir. 2005); also see Smith v. McCarthy, 349 Fed.Appx. 851, 859 (4th Cir. 2009), *cert. denied*, 562 U.S. 829, 131 S.Ct. 81, 178 L.Ed.2d 26 (2010); Brown v. Daniel, 230 F.3d 1351 (4th

Cir. 2000) ("[T]o the extent [plaintiff] alleges that the prosecutors engaged in misconduct during the prosecution of this case . . ., the prosecutors are absolutely immune.").

In spite of Plaintiff's fatally deficient pleadings as they relate to the Raleigh County Magistrate, it is noted that "[f]ew doctrines were more solidly established at common law than the immunity of judges from liability for damages for acts committed within their judicial jurisdiction, as this Court recognized when it adopted the doctrine in Bradley v. Fisher, 80 U.S. 335, __ S.Ct. __, 20 L.Ed. 646 (1872)." Imbler v. Patchman, 424 U.S. at 419.

Plaintiff essentially claims that his constitutional rights were violated by these Defendants simply by prosecuting him and by presiding over Plaintiff's criminal case(s). Based on the foregoing jurisprudence, it is clear these Defendants are entitled to absolute immunity.

Plaintiff's False Arrest Claims Fail as a Matter of Law:

As noted *supra*, Section 1983 provides a remedy for violations of all rights, privileges, or immunities secured by the U.S. Constitution and laws. A plaintiff's claim for false arrest or false imprisonment ceases once plaintiff is detained pursuant to legal process, and at this point, plaintiff's claim becomes a claim of malicious prosecution. See Wallace v. Kato, 549 U.S. 384, 388-89, 127 S.Ct. 1091, 1100, 166 L.Ed.2d 973 (2007) ("Reflective of the fact that false imprisonment consists of detention without legal process, a false imprisonment ends once the victim becomes held pursuant to such process - - when, for example, he is bound over by a magistrate or arraigned on charges . . . Thereafter, unlawful detention forms part of the damages for the entirely distinct tort of malicious prosecution, which remedies detention accompanied, not by absence of legal process, but by wrongful institution of legal process.")(internal citations omitted). In the context of a claim for malicious prosecution, the Fourth Circuit recognizes that an appropriate Section 1983 claim is "a claim founded on a Fourth Amendment seizure that

incorporates elements of the analogous common law tort of malicious prosecution." Lambert v. Williams, 223 F.3d 257, 262 (4th Cir. 2000), *cert. denied*, 531 U.S. 1130, 121 S.Ct. 889, 148 L.Ed.2d 797 (2001)(citing Brooks v. City of Winston-Salem, 85 F.3d 178, 183 (4th Cir. 1996)); see also Evans v. Chalmers, 703 F.3d 636, 647 (4th Cir. 2012)(finding that a Section 1983 malicious prosecution claim "is properly understood as a Fourth Amendment claim for unreasonable seizure which incorporates certain elements of the common law tort."). To state a Section 1983 claim for a seizure in violation of the Fourth Amendment, the defendant must have "seized plaintiff pursuant to legal process that was not supported by probable cause and the criminal proceeding [must] have terminated in plaintiff's favor." Burrell v. Virginia, 395 F.3d 508, 514 (4th Cir. 2005)(citing Brooks, 85 F.3d at 183-85)). Therefore, Plaintiff's claims against the Raleigh County Sheriff's Department or the West Virginia State Police, to the extent that Plaintiff was arrested on a false criminal complaint, are governed by the Fourth Amendment. Wilson v. Kittoe, 337 F.3d 392 (4th Cir. 2003); Malley v. Briggs, 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). Regardless, Plaintiff's claims are undercut by his own concessions – he admits to being arraigned after his arrest(s). Moreover, Plaintiff himself provides the probable cause for the resulting criminal proceedings, or at minimum, demonstrates these charges are not the product of wrongful legal process.

Plaintiff only provides conclusory allegations of being arrested and detained frequently on improper charges of fleeing (or simply being questioned by law enforcement to determine if he is the individual who fled from them via motorcycle – See, e.g., ECF No. 5 at 5, ¶22). Interestingly, Plaintiff concedes he has a revoked driver's license[6], and admits to having fled from law

---

[6] "No person, except those hereinafter expressly exempted, may drive a motor vehicle upon a street or highway in this state or upon a subdivision street used by the public generally unless the person has a valid driver's license issued pursuant to this code for the type or class of vehicle being driven." See W.Va. Code § 17B-2-1(a)(1). Operating a vehicle without a license is a misdemeanor. W.Va. Code § 17B-2-1(i).

enforcement "a lot" and even brags about his prowess in successfully evading police: "They even tried to hymn [*sic*] me up with a helicopter. But, LOL, the train in Eccles went by at same time and blocked all the cops trying to nab me. I slowly went home under the deciduous canopy of the trees and the copter could not even see me! ROFLMAO!" (See ECF No. 5 at 3, ¶11) Fleeing from an officer is a misdemeanor offense. See W. Va. Code § 61-5-17(e).

In short, Plaintiff's dubious claims of being "harassed" with frequent arrests, detentions by law enforcement are undermined by his own admissions of committing crimes. On that note, law enforcement officials from the Raleigh County Sheriff's Department and the West Virginia State Police (including any other agencies involved in the ongoing investigations or prosecutions against this Plaintiff) would, by Plaintiff's own admissions, enjoy immunity: "Qualified immunity shields government officials from civil liability insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Hill v. Crum, 727 F.3d 312, 321 (4th Cir. 2013)(internal quotation marks omitted). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier v. Katz, 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); see Smith v. Reddy, 101 F.3d 351, 355 (4th Cir. 1996)("If the right was not clearly established at the relevant time or if a reasonable officer might not have known his or her conduct violated that right, the officer is entitled to immunity.").

Application of Younger-Abstention Doctrine:

Additionally, this Court should abstain from exercising subject matter jurisdiction over Plaintiff's claims based upon the Younger-abstention doctrine. See Younger v. Harris, 401 U.S. 37 (1971). "Under the Younger-abstention doctrine, interest of comity and federalism counsel

federal courts to abstain from jurisdiction whenever federal claims have been or could be presented in ongoing state judicial proceedings that concern important state interests." Hawaii Housing Auth. v. Midkiff, 467 U.S. 229, 237-238 (1984).

The Fourth Circuit has recognized that "Younger abstention is appropriate only in those cases in which (1) there is an ongoing state judicial proceeding, (2) the proceeding implicates important state interest, and (3) there is an adequate opportunity to present the federal claims in the state proceeding." Employers Resource Management Co., Inc. v. Shannon, 65 F.3d 1126, 1134 (4th Cir. 1995), *cert. denied*, 516 U.S. 1094, (1996). A court should disregard Younger's mandate only where "(1) there is a showing of bad faith or harassment by state officials responsible for the prosecution; (2) the state law to be applied in the criminal proceeding is flagrantly and patently violative of express constitutional prohibitions; or (3) other extraordinary circumstances exist that present a threat of immediate and irreparable injury." Nivens v. Gilchrist, 44 F.3d 237, 241 (4th Cir. 2006) (internal quotations omitted). "[I]t is the plaintiff's 'heavy burden' to overcome the bar of Younger abstention by setting forth more than mere allegations of bad faith or harassment." Phelps v. Hamilton, 122 F.3d 885, 890 (10th Cir. 1997).

The undersigned finds that the Younger abstention doctrine applies here: Plaintiff clearly alleges ongoing criminal proceedings against him, and only invokes this Court's jurisdiction as a means to stop them – on the basis that law enforcement arrested the wrong perpetrator. Obviously, Plaintiff can plead his defense(s) during the State court proceedings. Despite Plaintiff's conclusory allegations that law enforcement harasses him with repeated house visits and arrests, resulting in multiple arraignments and detentions, Plaintiff provides no grounds that support any of the enumerated Nivens exceptions to the Younger mandate: Plaintiff fails to show improper

prosecution against him in State court, or facts supporting a claim for *unreasonable* harassment that comports with the bad faith exception.

As for Plaintiff's request for injunctive relief (both temporary and permanent), it is significant that courts have long recognized that such extraordinary remedies may only be used sparingly and in limited circumstances. See, e.g., Sarsour v. Trump, 245 F.Supp.3d 719 (E.D. Va. Mar. 24, 2017). To prevail on such a remedy, Plaintiff bears the burden to establish that (1) he is likely to succeed on the merits of his case; (2) he is likely to suffer irreparable harm in the absence of injunctive relief; (3) the balance of the equities tips in his favor; and (4) an injunction would be in the public interest. See Fed. R. Civ. P. 65. As demonstrated above, this Court should abstain from exercising jurisdiction over the parties and matters indicated in Plaintiff's Complaint, therefore, this Court is unable to provide injunctive relief in accordance with Plaintiff's request, particularly given how absurd it is on its face. Indeed, Plaintiff undermines his prayer for injunctive relief when he admits to being revoked for DUI and having fled from police when accused of trespass. Since there has been no appreciable showing that such an extraordinary remedy would be in the public interest, or that Plaintiff is likely to suffer any irreparable harm in the absence of same, Plaintiff's request to enjoin Defendants must be denied.

Claims Against the Chief (and/or "Owner") of the Coal River Fire Department:

Similar to the allegations against the other Defendants in this action, Plaintiff only provides "naked assertion[s]" for his claims against the Coal River Fire Department Chief; this is verboten pursuant to the jurisprudence espoused under Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) and Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Although a complaint need not assert "detailed factual allegations," it must contain "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555 (citations omitted). To survive

dismissal for failure to state a claim, the complaint must raise a right to relief that is more than speculative. Id. In other words, the complaint must contain allegations that are "plausible" on their face, rather than merely "conceivable." Id. at 555, 570. Plaintiff provides no detail as to what "stream" this Defendant "blocked" or what "right" Plaintiff supposedly has to access this "stream." As with his allegations of improper arrest(s), Plaintiff undermines his claims against the Chief by admitting to having fled law enforcement when accused of trespassing.[7]

Because Plaintiff's complaint lacks any basis in fact and law, the undersigned finds and concludes that this matter should be dismissed with prejudice.

### PROPOSAL AND RECOMMENDATION

The undersigned therefore respectfully **PROPOSES** that the District Judge confirm and accept the foregoing findings and **RECOMMENDS** that the District Judge **DENY** Plaintiff's Application to Proceed *in Forma Pauperis* (ECF No. 1), **DISMISS WITH PREJUDICE** Plaintiff's "Complaint(s)" (ECF Nos. 2, 5) and remove this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Frank W. Volk, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is

---

[7] While it is unclear from the specious allegations in Plaintiff's Complaint, it is notable that under W. Va. Code § 61-5-17, *supra*, an intent to impede or obstruct an investigation, or even flee from a State Fire Marshal or a full-time deputy or assistant fire marshal, is a misdemeanor. Plaintiff's allegations against the Fire Chief come dangerously close to being construed as an admission of additional wrongdoing.

made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 106 S.Ct. 466, 475, 88 L.E.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.E.2d 933 (1986); Wright v. Collins, 766 F.2d 841 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.E.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Volk, and this Magistrate Judge.

The Clerk of this Court is directed to file this Proposed Findings and Recommendation and to send a copy of same to the *pro se* Plaintiff.

ENTER: July 21, 2023.



Omar J. Aboulhosn
United States Magistrate Judge